1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  DIONNE SINGLETON,                    Case No.  1:24-cv-01417-BAM

12              Plaintiff,               **ORDER GRANTING IN PART
                                         PLAINTIFF'S MOTION FOR SUMMARY
13       v.                              JUDGMENT AND REMANDING THE
                                         ACTION IN FAVOR OF PLAINTIFF**
14  COMMISSIONER OF SOCIAL
    SECURITY,                            (Doc. 15)
15
                Defendant.
16

17                              **INTRODUCTION**

18
          Plaintiff Dionne Singleton ("Plaintiff") seeks judicial review of a final decision of the
19
    Commissioner of Social Security ("Commissioner") denying his application for supplemental
20
    security income ("SSI") under Title XVI of the Social Security Act.  Plaintiff's claim for
21
    disability stems from attention deficit hyperactivity disorder (ADHD), post-traumatic stress
22
    disorder (PTSD), and dyslexia (AR 258)[1], along with degenerative disc disease of the lumbar
23
    spine and obesity.  (AR 19.)  The matter is currently before the Court on Plaintiff's motion for
24
    summary judgment and the parties' briefs, which were submitted without oral argument, to
25

26
    _____
27  [1] References to the Administrative Record will be designated as "AR," followed by the
    appropriate page number.  References to the parties' briefs will refer to the stamped number at the
28  top of each page.

                                             1

1  Magistrate Judge Barbara A. McAuliffe.[2]  (Docs. 15, 16, 17.)

2        Having considered the briefing and record in this matter, the Court finds the decision of

3  the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record as a

4  whole or based upon proper legal standards.  Accordingly, this Court will recommend reversing

5  the agency's determination to deny benefits and remanding the matter for further proceedings.

6                        **FACTS AND PRIOR PROCEEDINGS**

7        Plaintiff protectively filed an application for supplemental security income on December

8  16, 2021.  (AR 191-200.) Plaintiff alleged that he has been disabled since June 18, 2010.  (AR

9  191.)  Plaintiff lists his impairments as "I can not [sic] read and write; Schitzophrenic [sic];

10 Mental health issues."  (AR 67.)  Plaintiff's application was denied initially and upon

11 reconsideration.  (AR 81-83; 104-108.)

12       On May 24, 2023, Plaintiff requested a hearing before an ALJ, which was held on January

13 30, 2024.  (AR 124; 34-65.)  On January 30, 2024, ALJ Scot Septer (the "ALJ" or "ALJ Septer")

14 held an in-person hearing.  (AR 34-65.)  On June 14, 2024, the ALJ issued an unfavorable

15 decision denying Plaintiff's claim on the basis that Plaintiff does not have an impairment or

16 combination of impairments that meets or medically equals the severity of one of the listed

17 impairments in 20 CFR Part 404, Subpart P, Appendix 1, and that Plaintiff has the residual

18 functional capacity ("RFC") to perform medium work with limitations.  (AR 14-29.)  This appeal

19 followed.  Plaintiff asks that the Court remand this case for further administrative proceedings

20 and a new decision pursuant to 42 U.S.C. § 405(g).  (Doc. 15 at 27.)

21       **<u>Hearing Testimony</u>**

22       On January 30, 2024, ALJ Septer held an in-person hearing.  (AR 34-65.)  Plaintiff

23 appeared in person and was represented by attorney Jeffrey Milam.  (*Id.*)  José Chaparro, an

24 impartial vocational expert, appeared via telephone.  (AR 56-61.)

25       In response to the ALJ's questions, Plaintiff testified that he was currently living with his

26

27 [2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all further
   proceedings in this action, including trial and entry of judgment pursuant to 28 U.S.C. 636(c)(1).
28 (Doc. 11.)

                                            2

parents and has been living with them since he was released in prison in 2021.  (AR 40, 41-42.)

The highest grade that he completed in school was tenth grade, and he never went back to

complete his education.  (*Id.*)  Plaintiff testified that he had problems learning and reading.  (AR

46.)  Plaintiff further testified that he attended special education classes.  (*Id.*)

Plaintiff has not worked in the last fifteen years.  (*Id.*)  When asked why he has not

worked during this time, Plaintiff responded that "I really don't like being, like, in crowded

places, around a lot of people . . . I just get nervous and, you know, be sweating.  It can be 20

degrees."  (AR 40.)  Plaintiff reports that he has "thought about" trying to work, but "[doesn't]

think [he] can do it" because of his inability to read or type.  (AR 46) ("Partially is, you know,

reading or typing.  I don't know how to do none of that stuff.  Like, McDonald's, they got the

pre-order thing.  I don't know how to do none of that stuff.")

Plaintiff reports that he has never taken the bus or other public transportation to get around

town and depends on his family members to take him to his appointments.  (AR 46-47.)  Plaintiff

speaks with his siblings by telephone "once a month, maybe ever[y] two months."  (AR 44.)  In

terms of household chores, Plaintiff testified that he "tr[ies] to take the trash cans to the curb" but

does not clean beyond vacuuming, dusting, and wiping down counters.  (AR 41, 49.)  He does not

cook beyond boiling noodles.  (AR 41, 44.)  Otherwise, he does "pretty much nothing."  He

testified that he does not go to the store on his own and never has, even before he was

incarcerated.  (AR 45.)  When he tries to do yard work around his home, he "[doesn't] ever

complete it" because he "get[s] agitated."  (*Id.*)

When asked what he does on a typical day, Plaintiff responded that he "just stay[s] in the

house."  (AR 41.)  He passes the time by watching television, including HGTV shows.  (AR 49.)

When asked how often he leaves the house in an average month, he responded "two or three

times."  (AR 47.)  Plaintiff responded affirmatively when asked whether being in prison has

anything to do with his unwillingness to leave the house.  (AR 47 ("Yes . . . I mean, you in the

cell all day.  Like, you might get out an hour, and then you're back in the cell for 23 hours a

day.")  He testified that he has no friends that he spends time with, does not leave the house for

church or social engagements, and only leaves the house to attend therapy appointments twice a

3

1    month and go to the grocery store.  (AR 41-42; 48-49.)  Sometimes he will "go in the front yard

2    for about ten minutes and back in the house."  (AR 41.)  Plaintiff remarked that his probation

3    officer was the person who recommended that he attend therapy because he rarely leaves his

4    home.  (AR 42) ("[I]t wasn't an order. She just—every time she'd pop up in my house, she was

5    like, you home.  You don't go nowhere. You don't do nothing.  You need to go . . . talk to

6    somebody.")  Plaintiff reported that his therapist also wants him to leave the house, but he

7    "[doesn't] really want to get out."  (AR 43.)

8         When asked why he rarely leaves his house, Plaintiff responded that he "feel[s] safer in

9    the house" and is "consistently" worried about violence.  (Id.) ("I mean, people being shot every

10   day").  When asked for the basis of his PTSD diagnosis, Plaintiff explained that he witnessed

11   violence in prison.  (AR 50) ("when I was in the pen, the first time I went to the pen, you see

12   people, like, get stabbed right next to you . . . it[] really—scares me, you know . . . out here, on

13   the streets, it's guns.")  Plaintiff states that he was in a gang in the past, and that he has "been shot

14   at a lot."  (AR 51.)

15        When asked about his back pain, Plaintiff testified that he has "constant" pain that

16   requires him to change positions from sitting, standing, and laying down "every 10 to 15

17   minutes."  (AR 52.)  Plaintiff testified that he was experiencing back pain sitting in the hearing.

18   (AR 51.)  Plaintiff estimates that he spends approximately three hours out of an eight-hour day

19   laying down.  (AR 52.)  Plaintiff testified that his doctors told him that there was nothing that

20   could be done for his back pain outside of surgery and pain medication.  (AR 52-53.)

21        When asked about his right shoulder pain, Plaintiff stated that it was dislocated "years

22   ago" and started hampering his ability to use his arm in approximately 2021.  (AR 62.)  Plaintiff

23   is right-handed.  (AR 61.)  Plaintiff indicated that he had been treated at St. Agnes for his

24   shoulder pain.  (Id.)  Plaintiff was asked whether he would be able to do a job that required

25   reaching out with his right arm, for example, picking apples off a belt or sorting small electronic

26   parts.  (AR 62-63.)  Plaintiff stated that he could do that type of work for "[l]ess than a third of

27   the day."  (AR 63.)

28        Plaintiff reports that he currently takes psychiatric medications, but that he did not

4

remember the names and his parents administer the medications to him.  (AR 44.)  He takes

medication for his back pain.  (AR 52.)

The ALJ elicited testimony from the vocational expert regarding hypothetical questions.

For the first hypothetical, the ALJ asked whether there would be jobs in the national economy for

an individual capable of light work would be able to (1) occasionally climb ramps, stairs, ladders,

ropes, and scaffolds, (2) occasionally balance, crawl, crouch, kneel, and stoop, (3) perform non-

complex jobs involving no more than simple, routine tasks, (4) maintain occasional contact with

co-workers and members of the public, and (5) including the limitations that the individual should

not work in environments that would expose them to unprotected heights or dangerous

machinery, or require reading or writing in the English language.  (AR 58.)  The vocational expert

indicated that there would be jobs for this hypothetical person, including working as a

housekeeper/cleaner (DOT code 323.687-014), routing clerk (DOT code 222.687.022), or marker

(DOT code 209.587-034).

The ALJ then asked whether the hypothetical individual would be able to perform such

jobs if they were able to "frequently" maintain the concentration and attention necessary to

perform simple tasks, but "occasionally" would be unable to maintain the appropriate level of

acuity.  (AR 59.)  The vocational expert testified that the jobs would not be available given this

limitation, and that "no other work is available, either."  (*Id.*)

On cross-examination by Plaintiff's attorney, the vocational expert was asked whether the

hypothetical individual would be able to perform the identified jobs if that individual had to lie

down at least two hours per eight-hour workday.  (AR 60.)  The vocational expert testified that

the individual would not be able to the identified jobs or any jobs at all.  (*Id.*)  The vocational

expert was then asked whether there would be any light jobs available for an individual who was

limited to sedentary work with a restriction to reaching forward occasionally with the right

shoulder.  (*Id.*)  The vocational expert stated that there are no jobs available with those

limitations.  (AR 61.)

**<u>Medical Record</u>**

The relevant medical record was reviewed by the Court and will be referenced below as

1    necessary to this Court's decision.

2        1.  *Examining Medical Source Opinion of Consultative Psychologist, Pauline*
3            *Bonilla, Psy.D.*

4        Clinical psychologist Dr. Pauline Bonilla, Psy.D., completed a comprehensive mental

5    health evaluation on Plaintiff on September 2, 2022.  (AR 336-342.)

6        Regarding Plaintiff's reports of schizophrenic symptoms, Dr. Bonilla notes that Plaintiff's

7    application "indicated that he had schizophrenia," but found that Plaintiff "did not report any

8    symptoms that met criteria for schizophrenia."  (AR 336.)  Dr. Bonilla indicated that Plaintiff did

9    not report any perceptual responses and was not observed to be responding to internal stimuli

10   during the interview.  (*Id.*)

11       Dr. Bonilla notes that that Plaintiff reported having anxiety starting around 2002, after his

12   first incarceration.  (AR 336.)  The evaluation indicates that Plaintiff had anxiety "due to

13   witnessing fights and incidents while he was incarcerated," and that Plaintiff reported an

14   "increase in nervousness in public and crowds," "[avoids] others due to lack of trust," and

15   symptoms of "heart palpitations, sweatiness, and shakiness."  (AR 336-37.)

16       Regarding Plaintiff's mental limitations, Dr. Bonilla noted that Plaintiff reports "difficulty

17   with reading comprehension and written expression," "difficulty with arithmetic," and that he

18   "requires simple and repetitive directions as well as frequent prompting and reminders."  (AR

19   337.)  Plaintiff "denies any inpatient hospitalizations," reported a history of receiving psychiatric

20   medication while he was incarcerated, described "cannabis use from the age of 12 to 37," and

21   "smoking marijuana on a daily basis."  (*Id.*)  The evaluation lists Plaintiff's current medications

22   as Trazodone, Losartan, Hydrochlorothiazide, Bupropion, Albuterol, and Budesonide.  (*Id.*)  Dr.

23   Bonilla notes that while Plaintiff is not currently participating in mental health treatment, he does

24   receive psychotropic medication from his primary care physician.  (*Id.*)

25       As a part of the mental status examination, Dr. Bonilla observed that Plaintiff's "[h]ygiene

26   and grooming was fair," "behavior was cooperative," "attitude was pleasant," "stream of [mental]

27   activity was within normal limits," "[s]peech form was logical, coherent, and concise,"

28   "[a]rticulation was clear," "[v]olume was normal," "[t]hought content was appropriate," "no

indications of hallucinations or delusions," "mood appeared to be slightly anxious," reports of poor sleep, and that Plaintiff's "intellectual functioning appeared to be within the average range." (AR 338.)  Plaintiff "appeared to respond to questions in an honest and open manner."  (AR 340.) Dr. Bonilla indicates that Plaintiff reports that "he is able to complete his adaptive living skills independently," "does not engage in household chores," "requires assistance grocery shopping and running errands," "does not cook or drive," and "mostly spends time with his immediate family and watching television."  (AR 339.)  Dr. Bonilla opined that "[t]here did appear to be some evidence of the claimant exaggerating symptoms, as well as inconsistencies at times during the evaluation," and placed Plaintiff's symptom severity as "in the mild to moderate range."  (AR 340.)  Dr. Bonilla further opined that "[t]he likelihood of the claimant's mental condition improving within the next 12 months with psychotherapy is good."  (*Id.*)  The examination also notes that Plaintiff "does appear to be suffering from a major mental disorder at this time," and that his limitations "appear to be primarily due to medical and mental health issues."  (*Id.*)

Dr. Bonilla made the following findings: (1) Plaintiff's ability to perform simple and repetitive tasks is unimpaired, (2) Plaintiff's ability to perform detailed and complex tasks is mildly impaired, (3) Plaintiff's ability to accept instructions from supervisors is mildly impaired, (4) Plaintiff's ability to interact with coworkers and the public is mildly impaired, (5) Plaintiff's ability to sustain an ordinary routine without special supervision is mildly impaired, (6) Plaintiff's ability to maintain regular attendance in the workplace is mildly impaired, (7) Plaintiff's ability to complete a normal workday/workweek without interruptions from a psychiatric condition is mildly impaired, (8) Plaintiff's ability to deal with stress and changes encountered in the workplace is moderately impaired, and (9) the likelihood of the claimant emotionally deteriorating in the work environment is minimal.  (*Id.*)

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ's June 14, 2024 decision determined that Plaintiff was not disabled under the Social Security Act.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since November 30, 2021, the application date.  (AR 19.)  The ALJ identified the following severe impairments:

1  learning disorder, degenerative disc disease of the lumbar spine, and obesity.  (*Id.*)  The ALJ

2  determined that Plaintiff does not have an impairment or combination of impairments that meets

3  or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,

4  Appendix 1.  (AR 21.)

5       Based on a review of the entire record, the ALJ found that Plaintiff has the RFC to

6  perform medium work as defined in 20 CFR 416.967(c) and is able to perform jobs of a non-

7  complex nature requiring the performance of no more than simple, routine tasks, and should not

8  work in occupations requiring reading or writing in the English language.  (AR 23.)  The ALJ

9  also noted that Plaintiff has no past relevant work, has a limited education, and has no

10  transferable job skills because of a lack of past relevant work.  (AR 27-28.)  The ALJ concluded

11  that Plaintiff has not been under a disability as defined in the Social Security Act, since

12  November 30, 2021, the date the application was filed.  (AR 29.)

13                                **SCOPE OF REVIEW**

14       Congress has provided a limited scope of judicial review of the Commissioner's decision

15  to deny benefits under the Social Security Act.  In reviewing findings of fact with respect to such

16  determinations, this Court must determine whether the decision of the Commissioner is supported

17  by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere

18  scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.

19  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n.10 (9th Cir. 1975).  It is "such relevant evidence

20  as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

21  401.  The record as a whole must be considered, weighing both the evidence that supports and the

22  evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995

23  (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the

24  proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This

25  Court must uphold the Commissioner's determination that the claimant is not disabled if the

26  Commissioner applied the proper legal standards, and if the Commissioner's findings are

27  supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d

28  509, 510 (9th Cir. 1987).  "[T]he court will not reverse an ALJ's decision for harmless error,

                                        8

1  which exists when it is clear from the record that the ALJ's error was inconsequential to the

2  ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)

3  (internal citation quotation marks omitted).

4  <center>**REVIEW**</center>

5        In order to qualify for benefits, a claimant must establish that he or she is unable to engage

6  in substantial gainful activity due to a medically determinable physical or mental impairment

7  which has lasted or can be expected to last for a continuous period of not less than twelve months.

8  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental

9  impairment of such severity that he or she is not only unable to do his or her previous work, but

10  cannot, considering his or her age, education, and work experience, engage in any other kind of

11  substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882

12  F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v.*

13  *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

14  <center>**DISCUSSION**[3]</center>

15      **A.  Examining Medical Source Opinion of Consultative Psychologist, Pauline Bonilla,**
16          **Psy.D.**

17        In weighing Dr. Bonilla's opinion related to Plaintiff's intellectual disorder and functional

18  limits, the ALJ reasoned as follows:

19  
20  > On September 2, 2022, Pauline Bonilla, Ph.D., performed a comprehensive mental health
> evaluation (Exhibit 6F). The claimant reported learning disability, schizophrenia, and
> anxiety. The mental status examination revealed a cooperative behavior and pleasant
21  > attitude. Speech and thought content were normal. There was slightly anxious mood. His
> intellectual functioning was within average age and remote memory was intact. Recent
22  > memory was impaired because he was only able to recall two of four digits forward, two
> of four digits backwards, and zero of three objects after five minutes. He also had
23  > difficulty with serial 3s, but concentration was within normal limits. Judgement and
> insight were within normal limits (Exhibit 6F, pp. 3-4).

24  (AR 25.)

25        Elsewhere in his decision, the ALJ provided additional reasoning related to Dr. Bonilla's

26  ---

27  [3] The parties are advised that this Court has carefully reviewed and considered all of the briefs,
including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a
reference to any specific argument or brief is not to be construed that the Court did not consider
28  the argument or brief.

<center>9</center>

opinion:

> On September 2, 2022, Dr. Bonilla opined the claimant was unimpaired in his ability to perform simple and repetitive tasks. He was mildly limited in all other areas except for in his ability to deal with the stress and changed encountered in the workplace was moderately impaired (Exhibit 6F, p. 5). I find Dr. Bonilla's opinion generally persuasive because it is founded and supported upon examination (Exhibit 6F, pp. 3-4) and is consistent with and aligns with the longitudinal record. For example, mental status examinations were generally normal except for anxious and depressed mood (Exhibits 9F, pp. 40, 46; 14F, pp. 57, 63). The limitation in the residual functional capacity above that he should not work in occupations requiring reading or writing in English language is warranted because the claimant has impaired short term memory, but has concentration.

(AR 26.)

At step three of the sequential analysis, the ALJ made the following finding regarding Plaintiff's RFC:

> [T]he claimant is able to perform medium work as defined in 20 CFR 416.967(c) except the claimant is able to perform jobs of a non-complex nature requiring the performance of no more than simple, routine tasks, and should not work in occupations requiring reading or writing in the English language.

(AR 23.)  In making this finding, the ALJ summarized Plaintiff's self-reports, including that Plaintiff "was unable to work because of mental health issues," reported that "it was hard to be around a lot of people," "[h]e has difficult taking instruction and difficulty sleeping due to nightmares," but also that "[h]e is able to care for his own personal needs, but needs reminders to bathe," "he can cook simple meals, go out alone, shop in stores," and "socializes in person or on the phone and attends church regularly."  (AR 24.)  The ALJ also summarized medical clinicians' observations and findings, including the findings of Dr. Bonilla, among many others.  (AR 24-27.)

Plaintiff argues that despite finding the opinion persuasive, the ALJ materially departed from the medical opinion when formulating Plaintiff's RFC by restricting Plaintiff to performing simple, routine tasks, "which failed to address Dr. Bonilla's opinion that Plaintiff had limitations in his ability to deal with workplace stress or adapt to workplace changes."  (Doc. 15 at 21.) Plaintiff argues that a restriction to simple and routine tasks does not capture the deficiencies identified by Dr. Bonilla that Plaintiff has moderate limitations in handling stress and changes in routine.  (*Id.*)

Defendant counters by arguing that where, as here, an ALJ finds an opinion less than fully

1    persuasive, the ALJ is not required to discuss every limitation in a medical opinion, so long as the

2    RFC is supported by substantial evidence.  (Doc. 16 at 28.)  Defendant further argues that the

3    RFC formulation adequately accounts for Plaintiff's mental functional limitations by limiting him

4    to "simple, routine tasks."  (*Id.* at 27.)

5            The ALJ's RFC assessment, and any resulting hypothetical presented to a vocational

6    expert, must include all of Plaintiff's credible limitations.  *Bagby v. Comm'r of Soc. Sec.*, 606 F.

7    App'x 888, 890 (9th Cir. 2015); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th

8    Cir. 2009).  An ALJ's RFC assessment may sufficiently account for a medical opinion regarding

9    limitations without using the same language as the provider such that an ALJ is permitted to

10   "translate" a medical opinion into the concrete restrictions that are available to the ALJ.  *Stubbs-*

11   *Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008).

12           The RFC does not completely account for the opined limitations in Dr. Bonilla's opinion.

13   The ALJ does not address the moderate limitations to Plaintiff's ability to deal with the stress and

14   change encountered in the workplace identified by Dr. Bonilla, whose opinion the ALJ found

15   "generally persuasive."  (AR 26.)   And while including a limitation in the RFC to "jobs of a non-

16   complex nature" involving no more than "simple, routine tasks" is sufficient to address mental

17   limitations related to concentration, persistence, and pace, it is insufficient to address all moderate

18   non-exertional limitations, including mental limitations regarding adaptability and self-

19   management.  *Stubbs-Danielson*, 539 F.3d at 1174; *Aaron v. Dudek*, No. 1:24-CV-00372-KES-

20   BAM, 2025 WL 671815, at *7 (E.D. Cal. Mar. 3, 2025), *report and recommendation adopted sub*

21   *nom Aaron v. Comm'r of Soc. Sec.*, No. 1:24-CV-00372-KES-BAM, 2025 WL 2522517 (E.D.

22   Cal. Sept. 2, 2025) (collecting cases); *Blaze J. v. Comm'r of Soc. Sec. Admin.*, No. CV-24-02251-

23   PHX-SHD, 2025 WL 2733271, at *4 (D. Ariz. Sept. 25, 2025).

24           Defendant argues that where an ALJ finds an opinion less than fully persuasive, the ALJ

25   need not discuss every limitation in that opinion so long as the RFC is otherwise supported by

26   substantial evidence.  (Doc. 16 at 28.)  However, courts have found an RFC to insufficiently

27   account for medical opinions even where the ALJ has not fully credited the opinions.  *See Aaron*,

28   2025 WL 671815, at *6; *Christopher G. v. Saul*, No. 2:19-CV-06150-AFM, 2020 WL 2079972,

*5 n.3 (C.D. Cal. Apr. 30, 2020).  If the ALJ intends to depart from Dr. Bonilla's opinion, he must explain his reasons for doing so.  *See Patterson v. Comm'r of Social Sec.*, No. 2:23-cv-00635 AC, 2024 WL 4216810, at *8 (E.D. Cal. Sept. 17, 2024) (An ALJ errs when they do not explain why they did not adopt all findings or limitations from a persuasive opinion).

In his hypotheticals to the vocational expert, the ALJ does not ask about workplace restrictions that would account for Plaintiff's limitations in handling workplace stress or changes in routine.  (AR 57-61.)  "A hypothetical question posed to a vocational expert must 'include all of the claimant's functional limitations, both physical and mental.'"  *Brink v. Comm'r Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009) (citing *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995)).  While the ALJ does include in the hypothetical that the individual "could maintain occasional contact with co-workers and members of [the public]," he does not ask about limitations concerning Plaintiff's ability to deal with stress and change encountered in the workplace.  (AR 58.)  *Blaze J.*, 2025 WL 2733271, at *4 (finding that "the RFC limitation that Claimant only occasionally spend time with the public and co-workers has little to do with Claimant's adaptability and self-management").

The Court remands this case for further administrative proceedings.  On remand, the ALJ should specifically address the opined limitations in Dr. Bonilla's opinion.

**B. Remedy**

Given the identified error, the Court must decide the appropriate remedy.  The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion.  *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Unless "the record has been fully developed and further administrative proceedings would serve no useful purpose," remand for further proceedings is warranted.  *Garrison*, 759 F.3d at 1020.  Accordingly, this action shall be remanded to the Commissioner of Social Security for further administrative proceedings pursuant to Section 205(g) of the Social Security for further proceedings pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. 405(g).

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments regarding the evaluation of (1) Plaintiff's subjective reports of his mental health

1    symptoms, (2) treating medical source opinion of Plaintiff's therapist, Sandra Holland, LMFT,

2    and the ALJ's duty to develop the record, (3) examining medical source opinion of consultative

3    psychologist, Lynne Reinfurt, Ph.D., (4) Plaintiff's educational level, and (5) any inconsistency

4    between the vocational expert's testimony and the Dictionary of Occupational Titles, all of which

5    can be addressed, as necessary, on remand.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir.

6    2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach

7    [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536

8    F.Supp.2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims

9    plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all

10   of which can be addressed on remand."); *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir.

11   1990) ("Because we remand for reconsideration of step three, we do not reach the other

12   arguments raised.").

13                                    **CONCLUSION**

14        Based on the foregoing, IT IS HEREBY ORDERED that:

15   1.  The above-captioned action be remanded to the Commissioner of Social Security for

16       further proceedings consistent with this Order;

17   2.  Judgment is entered in favor of Plaintiff Dione Singleton and against Defendant

18       Commissioner of Social Security; and

19   3.  The Clerk of the Court is directed to close this action.

20

21   IT IS SO ORDERED.

22        Dated:   **December 12, 2025**          /s/ *Barbara A. McAuliffe*

23                                         UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28

                                        13